IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KIM HARRIS | : | |
| | : | Civil Action |
| | : | |
| vs. | : | |
| | : | No. 08-3746 |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | |
| | : | |

**Jones, J.**                                                                                      **July 27, 2009**

## MEMORANDUM

### I. Introduction

Plaintiff Kim Harris brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security, who denied the application of Kim Harris for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act. Presently before the Court are the plaintiff's request for review and the defendant's response to the request for review. The case was sent to United States Magistrate Judge Linda K. Caracappa ("MJ") for a Report and Recommendation ("R&R"). The MJ recommended that the plaintiff's request for review be denied. Plaintiff has filed objections to the MJ's R&R.

Upon careful and independent consideration of the administrative record, the Administrative Law Judge's ("ALJ") decision, the R&R and the plaintiff's objections thereto, the Court finds that there is substantial evidence supporting the ALJ's decision.

The facts and procedural history of this case are sufficiently recounted in the R&R and

the Court will not repeat them here except as necessary below.

## II. Legal Standards

The Court reviews the ALJ's decision to determine whether there is substantial evidence on the record to support it. 42 U.S.C. § 405(g) (2008); Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence is not a large or significant amount of evidence but rather such relevant evidence as a reasonable mind might accept to support a conclusion. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Contradictory evidence may be found in the record, but it is not cause for reversing the Commissioner's decision if substantial support exists for the decision within the record. Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Even if the Court would have decided the case differently, the Court must afford deference to the Commissioner and affirm the ALJ's credibility determinations if substantial evidence supports them. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). "The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). In addition, the Court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

To establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Sec'y of Health and Human Servs, 841 F.2d 57, 59 (3d Cir. 1988) (quoting Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1) (1982). The claimant satisfies his burden by showing an inability to return to his past relevant work. Doak v. Heckler, 790 F.2d 26, 28 (3d

Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy. 20 C.F.R. § 404.1520. See Rossi, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (I) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled.
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
> (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
> (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

### III. Discussion

#### A. The ALJ's Decision

Using the above mentioned sequential evaluation process, the ALJ determined plaintiff

has not been under a "disability," as defined in the Social Security Act, since December 6, 2004, the date the plaintiff's applications for DIB and SSI were protectively filed, through the date of the ALJ's decision. (Tr. 23).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful work activity since plaintiff's application date. (Tr. 16). At step two, the ALJ found that plaintiff's mood disorder was a "severe" impairment within the meaning of the Regulation. (Tr. 16). In making this determination the ALJ relied upon plaintiff's following summarized medical records:

Plaintiff was seen at Wes Health Center on January 3, 2002, for an adult psychiatric evaluation. (Tr. 200-207). Plaintiff was seen by Dr. O'Connell D. Miles, M.D. Dr. Miles diagnosed plaintiff with depressive disorder and gave plaintiff a GAF of 60. Plaintiff was again seen on January 11, 2002 at Wes Health Center. Plaintiff was seen by a center therapist and was given a diagnosis of depressive disorder mild with a GAF score of 50. (Tr. 210). Plaintiff had a psychosocial evaluation on January 23, 2002 at the Wes Health Center. A therapist at the center reported plaintiff had depressive disorder mild and plaintiff was given a GAF of 50. (Tr. 196-199). Dr. Carl Herman, M.D., performed a consultative examination on plaintiff on September 23, 2005. (Tr. 219- 223). Dr. Herman diagnosed plaintiff with bipolar disorder and substance dependence, in remission. (Tr. 220). Dr. Herman noted "marked" limitations in plaintiff's ability to interact appropriately with supervisors, and interact appropriately with coworkers. (Tr. 222). However, during the mental status examination Dr. Herman found "the client is accur. (sic) oriented and in full contact with her environment. Immed. (sic) retention and short-term memory are very good... She can interpret a proverb

abstractly. Attitude is pleasant co-operative with no hostility but with underlying dependence. Mood is now mildly depressed. Thinking is logical, coherent and relevant with no loosening of associations, flight of ideas or hallucinations. There is some low-level paranoid ideation. Judgment is good." (Tr. 219-220).

On September 29, 2005, a state agency psychological consultant reviewed plaintiff's medical records and found plaintiff moderately limited in her ability to: understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them, make simple work-related decisions; complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in work settings; and, to set realistic goals or make plans independently of others. In all the other ratable areas the claimant was found to be not significantly limited. (Tr. 224-227). The State Agency psychological consultant found plaintiff was experiencing a mild degree of limitation in daily living activities; moderate limitations in her social functioning; moderate deficiencies of concentration, persistence and pace; and that plaintiff has had one or two episodes of deterioration or decompensation in work settings. (Tr. 238). Dr. Miles, plaintiff's treating psychiatrist, performed an adult psychiatric evaluation on December 14, 2005. Dr. Miles diagnosed plaintiff with a depressive disorder not otherwise specified and gave

plaintiff a GAF score of 57.

On April 17, 2007, Dr. Miles's progress notes indicated that plaintiff has improved clinically. (Tr. 295). Dr. Miles filled out a medical assessment of ability to do work related activities form on April 5, 2007. Dr. Miles found that plaintiff is constantly limited in her ability: to relate to co-workers; to deal with the public; to interact with supervisor; to deal with work stresses; to understand, remember and carry out detailed, but not complex, job instructions. (Tr. 342-344). Dr. Miles then found plaintiff had marked restriction of activities of daily living; extreme difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation. (Tr. 339).

At step four, the ALJ found that plaintiff has the residual functional capacity to perform less than the full range of medium work, in that, while the claimant can perform the full range of medium exertional activity, she is limited to simple, repetitive tasks, with a 1-2 reasoning, occasional changes in the work setting and only occasional contact with co-workers and the public. (Tr. 17). The ALJ considered plaintiff's medical records, hearing testimony, and the opinion of the VE in making the decision. (Tr. 17-18). The ALJ determined that plaintiff's medically determinable impairments could be expected to produce plaintiff's alleged symptoms. However, the ALJ found that plaintiff's testimony as to the intensity, duration, and limiting effects of the symptoms were not entirely credible. (Tr. 18-19). The ALJ explained that plaintiff's testimony was ambiguous in many respects. Plaintiff testified first that she has 2-3 bad days a week in which she sleeps all day, but then plaintiff testified that if she takes her medication she sleeps at night and does not need to sleep during the day. (Tr. 40-41). The ALJ noted that the most recent medication form completed by plaintiff's treating psychiatrist stated

that plaintiff's sleep has improved. (Tr. 295). Plaintiff also testified that she has anger issues. Plaintiff testified that she often doesn't get out of bed or bathe and she was hospitalized once at the Eastern Pennsylvania Psychiatric Institute for depression in 2004. (Tr. 40, 44). However, the ALJ noted that plaintiff has two children whom she adopted in 2000, after their mother, the plaintiff's sister, died. The ALJ explained that the Department of Human Services did an investigation and approved her as an adoptive parent. (Tr. 32-34). Plaintiff also testified she does her own wash, cleans her room and does her own food shopping. (Tr. 41-42). The ALJ found plaintiff was not wholly credible. Finally, the ALJ explained that treating psychiatrist Dr. Miles indicated that plaintiff is constantly limited in her ability: to relate to co-workers; to deal with the public; to interact with supervisor; to deal with work stresses; to understand, remember and carry out complex job instructions; to understand, remember and carry out detailed, but not complex, job instructions. (Tr. 342-344). Dr. Miles then found plaintiff had marked restriction of activities of daily living; extreme difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation. (Tr. 339). The ALJ found no significant weight should be accorded to Dr. Miles. The ALJ found that Dr. Miles' opinion was not supported by the medical records and conflicted with Dr. Miles' own previous diagnoses of plaintiff. (Tr. 20). The ALJ explained that in 2005 Dr. Miles diagnosed plaintiff with depressive disorder not otherwise specified and gave plaintiff a GAF score of 57. A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning (<u>e.g.</u>, suicidal ideation, severe obsessional rituals, frequent shopping or any serious impairment in social, occupational or school functioning (no friend, unable to keep a job). Diagnostic and Statistical Manual of Mental

7

Disorders (DSM-IV) at 32. The ALJ also noted that Dr. Miles' progress notes do not indicate ongoing significant problems. Furthermore, as recent as April 12, 2007, Dr. Miles noted that plaintiff had improved clinically. (Tr. 20). The ALJ also noted that no significant weight should be accorded to the January 11, 2002, and January 23, 2002, notes from Wes Health Center in which it is noted that plaintiff was given a diagnosis of depressive disorder mild with a GAF score of 50. (Tr. 196-199, 210). The ALJ explained that these two notes were written by a center therapist and not from a psychiatrist or a physician and as such they should be given little probative weight. (Tr. 20).

Finally, at step five the ALJ found that plaintiff is unable to perform any past relevant work. (Tr. 22). However, the ALJ found that based on plaintiff's age, education, and residual functional capacity, there are jobs in the national economy that plaintiff can perform. (Tr. 22). Thus, the ALJ determined that plaintiff has not been under a "disability," as defined in the Social Security Act, from December 6, 2004 though the date of the ALJ's decision. (Tr. 23). In making this determination the ALJ noted that the VE testified that plaintiff could perform the jobs of a hand packer, a food service worker, and a bench assembler. (Tr. 23). At the hearing the ALJ asked the VE to consider a hypothetical individual with plaintiff's age, education, and past work history, and who has no physical limitations, but is limited to simple, repetitive tasks with a one/two reasoning, with only occasional changes in the work setting and occasional contact with public and coworkers. (Tr. 54). Based on the hypothetical, the VE stated that plaintiff would be able to perform the jobs of a hand packer, a food service worker, and a bench assembler. (Tr. 55).

In sum, the ALJ determined the medical evidence established that plaintiff "has the

8

following severe impairment: a mood disorder." (Tr. 16). The ALJ found that plaintiff has the residual functional capacity to perform less than the full range of medium work in that, while the claimant can perform the full range of medium exertional activity, she is limited to simple, repetitive tasks, with a 1-2 reasoning, occasional changes in the work setting and only occasional contact with co-workers and the public. (Tr. 17). The ALJ concluded that plaintiff could perform the jobs of, *e.g.*, a hand packer, a food service worker, and a bench assembler. (Tr. 23).

## B. Objections and Discussion

### 1. Ambiguity at Step Four

Plaintiff's first objection is that the ALJ made an ambiguous finding at finding four of the analysis, rendering that finding fundamentally contradictory and confusing. More specifically, plaintiff contends that the heading of fact finding number four (that the claimant is unable to perform any past relevant work) and what is written in finding number four (that the claimant can perform the duties of her past relevant work) are irreconcilably contradictory. Plaintiff contends that this conflict requires remand for clarification.

In the R&R, the MJ found that (1) the ALJ meant to find that Plaintiff was unable to perform past relevant work because the ALJ would otherwise have stopped at that step (i.e., not proceeded to step five), and (2) even if the ALJ's finding at step four was an error, it is harmless error in light of the ALJ's finding at step five that there are jobs in the national economy that plaintiff can perform.

The Court agrees with the Commissioner that plaintiff's objection to the R&R's conclusion is without merit. If the ALJ finds conclusively that a claimant is disabled or not

9

disabled at any point in the sequence, review does not proceed to the next step. 20 C.F.R. §§ 404.1520(a), 416.920(a). Here, the ALJ reached the "last step" (which is step five) and made findings relevant thereto. See Tr. at 15-16; see also Tr. at 22-23 (discussing the Medical-Vocational Guidelines (grids), which only apply at step five, after the ALJ has determined that the claimant is incapable of performing her past relevant work at step four); id. (discussing vocational factors such as age, education and work experience that are considered at step five - not step four - of the sequential process). In addition, the Third Circuit has found that even if there were an erroneous step four finding, it can be rendered harmless by the identification of other work consistent with the plaintiff's residual functional capacity at step five, which is what occurred here. See, e.g., McGonigal v. Barnhart, 153 Fed. Appx. 60 (3d Cir. 2005).

Accordingly, the MJ's conclusions were correct and this objection shall be overruled.

### 2. ALJ's Evaluation of the Evidence

Plaintiff's second objection is that the ALJ did not consider all relevant evidence. More specifically, plaintiff contends that, *inter alia*, the ALJ did not consider enough of plaintiff's treatment notes and medical symptoms. In connection with that argument, plaintiff asserts that the ALJ did not properly explain why relevant evidence was not explicitly weighed in arriving at the decision.

In the R&R, the MJ found that the ALJ (1) gave a detailed explanation of all the medical evidence that was considered and why portions of the record were found not wholly credible, (2) discussed the majority of the items listed by plaintiff, and (3) gave proper weight to all credible medical evidence and adequately explained why any conflicting opinions were not adopted in her assessment of residual functional capacity.

10

The Court finds that plaintiff's objection to the R&R's conclusion is without merit. When determining a plaintiff's residual functional capacity, the ALJ must consider all relevant evidence. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001); see also 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546. This includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." Fargnoli, 247 F.3d at 41. The ALJ must provide some explanation when she has rejected relevant evidence or when there is conflicting probative evidence in the record. Cotter, 642 F.2d at 706-07. The court is "unable to conduct [its] substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). However, "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981). An ALJ need not explicitly reference every piece of evidence and testimony submitted. See Fargnoli, 247 F.3d at 42 (noting that the ALJ need not "make reference to every relevant treatment note in a case where the claimant... has voluminous medical records"). There is no requirement that the ALJ discuss every tidbit of evidence included in the record. See Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004). Under Third Circuit law, to determine whether remand is appropriate, the court must assess whether the data in question would have affected the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Here, the Court finds that the ALJ carefully considered the entire record, see Tr. at 16, discussed the relevant and probative evidence, see Tr. at 16-23, and provided a rationale supported by substantial evidence for rejecting or accepting the medical source opinion evidence

11

by applying the factors for weighing opinion evidence in conformity with the Commissioner's regulations, see Tr. at 16-22. The ALJ discusses treatment notes in various contexts; the ALJ was not required to discuss in detail every page of the treatment notes. Furthermore, there was substantial evidence for the ALJ's finding that Dr. Miles' opinion was not supported by the medical records (including the aforementioned treatment notes) and conflicted with Dr. Miles' own previous diagnoses of the plaintiff.[1] The Court also finds that the ALJ discussed most of the medical symptoms listed by the plaintiff when the ALJ found that plaintiff's testimony was not entirely credible. To wit, substantial evidence supported the conclusion that plaintiff's testimony regarding her medical symptoms was ambiguous. While the ALJ was not required to discuss every tidbit of evidence in the record, the Court finds that, in light of the totality of the substantial record evidence, any data not discussed by the ALJ would not have affected the outcome of the case. See Rutherford, 399 F.3d at 552.

### 3. ALJ's Credibility Assessment

Plaintiff's objection to the ALJ's credibility assessment appears to be based solely upon the argument that the assessment was fundamentally tainted and resulted in an impermissible outcome as a result of the improper and irrelevant statement: "If someone is fit to be a parent, they are certainly fit to work." However, to give the plaintiff the benefit of the doubt, the Court will assume that the plaintiff intended to challenge the credibility assessment on wider grounds and merely worded her objections inartfully.

An ALJ is empowered to evaluate a claimant's credibility. Van Horn v. Schweiker, 717

---

[1] Because Dr. Miles' opinion was inconsistent with other substantial evidence, the ALJ was not required to give it controlling weight simply because he was a treating psychiatrist. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.2d 871, 873 (3d Cir. 1983). Even if an ALJ concludes that a medical impairment exists which could reasonably cause the symptoms alleged, he must evaluate the intensity and persistence of the symptoms, and the extent to which they affect the claimant's ability to work. 20 C.F.R. § 404.1529(b) and (c). In doing so, the ALJ may consider the internal consistency of the claimant's own statements, the medical evidence, the claimant's medical treatment history, and findings by state agency or other program physicians. 20 C.F.R. § 404.1529(c).

The Court finds that the ALJ's credibility determination was supported by substantial evidence. Specifically, the Court agrees with the MJ that (1) the ALJ adequately explained that plaintiff's testimony as to her sleep patterns was ambiguous, (2) the ALJ adequately explained the conclusion that plaintiff was not credible because of sporadic medical treatment, and (3) the ALJ made an appropriate observation that the plaintiff's behavior as her children's primary caregiver was inconsistent with her alleged medical symptoms and treatment.[2] The Court further finds that Social Security Ruling 85-15 does not apply here.

---

[2] As to the last point, the ALJ's observations regarding the plaintiff's activities as a parent were legally relevant to the credibility determination because (1) they were inconsistent with the plaintiff's activities, including the fact that DHS approved her as an adoptive parent, see Tr. at 19-20, (2) they were not supported by her ambiguous testimony regarding sleeping all day, see Tr. at 19, (3) they were inconsistent with Dr. Miles' clinical findings, see Tr. at 20, (4) they were inconsistent with Dr. Herman's clinical findings, see Tr. at 21, (5) they were not supported by Dr. Chiampi's opinion, see Tr. at 21, (6) they were inconsistent with the gaps in her mental health treatment, see Tr. at 19, and (7) they were not supported by the limited clinical evidence of asthma-related functional limitation, see Tr. at 17. Importantly, the Commissioner's regulations provide that daily activities (*e.g.*, child-related activities) are relevant and can be considered in evaluating a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). As such, there is no merit to the plaintiff's argument that the ALJ's consideration of such constituted an improper negative inference.

### 4. The ALJ's Residual Functional Capacity Assessment

Plaintiff asserts that the ALJ (1) failed to explain how the residual functional capacity for medium work was determined, (2) failed to include all of plaintiff's physical limitations in the record, and (3) made a residual functional capacity finding that did not contain a mental residual functional capacity analysis. In the R&R, the MJ found that these arguments were without merit.

First, the Court agrees with the MJ's conclusion that the plaintiff, whose burden it is to prove she has a disability that is so severe as to prevent her from engaging in any substantial gainful activity that exists in the national economy, 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A), (d)(5)(A); Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990), has failed to support her argument with any evidence. Rather, plaintiff only argues that the ALJ did not support the finding that plaintiff could perform medium work. This is insufficient to carry plaintiff's burden.[3] The Court agrees with the MJ that the only impairment found by the ALJ and supported by the record was a mental impairment. Accordingly, plaintiff has not offered any convincing evidence to dispute the residual capacity finding that there was no physical impairment and the conclusion that plaintiff could perform medium work.

Second, the Court agrees with the MJ that the ALJ considered plaintiff's physical impairments in the record. The ALJ considered plaintiff's asthma. Moreover, the ALJ's hypothetical to the vocational expert demonstrated that the ALJ, despite the conclusion that plaintiff's asthma was a non-severe impairment, was considering whether plaintiff's asthma

---

[3] Even if one were to assume that plaintiff had met this burden, the Court is satisfied that the ALJ addressed the alleged asthma impairment, finding there was minimal clinical evidence to support a finding based thereon and concluding that plaintiff's asthma was a non-severe impairment.

dictated some environmental restriction on plaintiff (*e.g.*, the need to avoid dust, fumes, toxins, and other environmental hazards) in the residual functional capacity finding.[4]

Finally, the Court agrees with the MJ that the ALJ made a residual functional capacity finding that contained an adequate mental residual functional capacity analysis. Plaintiff's claim is unsupported. The ALJ made a clear mental residual capacity finding, concluding that the plaintiff is limited to simple, repetitive tasks, with 1-2 reasoning, occasional changes in work setting and only occasional contact with co-workers and the public. The ALJ noted plaintiff's testimony as to other mental capacity related conditions, but, within its discretion, found plaintiff's testimony not wholly credible.

Accordingly, the ALJ's residual functional capacity assessment is supported by substantial evidence.

### 5. ALJ's Weighing of Medical Opinion Evidence

Plaintiff asserts that the ALJ failed to adequately analyze the record and give appropriate emphasis to the treating physicians. Specifically, plaintiff contends that the ALJ should have given controlling weight to the opinions of Dr. Miles and Dr. Herman. In addition, plaintiff claims that the ALJ erred in giving weight to the opinion of the non-examining state agency psychologist, Dr. Chiampi. The MJ disagreed.

---

[4] Plaintiff also appears to suggest that the ALJ was also obligated to discuss obesity, carpel tunnel in wrists, knee pain and foot deformity. However, none of plaintiff's physicians opined that those alleged physical impairments would preclude her from performing any substantial gainful activity or that plaintiff would experience any limiting effects due to those alleged conditions. Indeed, plaintiff herself never actually alleged that she was disabled in whole or part due to such alleged impairments. The ALJ was not obligated to consider impairments that the plaintiff herself did not assert as limiting. As such, there is no basis for remand. See, e.g., Rutherford, 399 F.3d at 552-53.

Generally speaking, enhanced weight should be given to the findings and opinions of treating physicians. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993). However, the ALJ is not bound by a physician's statement of disability and may reject it if there is a lack of data supporting it, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985), or there is contrary medical evidence, Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988). The weight given to a physician's opinion depends upon the extent to which it is supported by clinically acceptable medical data. Coria, 750 F.2d at 247.

The Court finds the ALJ's conclusion that no significant weight should be afforded to Dr. Miles and Dr. Herman was based on substantial evidence.[5] Dr. Miles' opinion conflicted with his previous diagnoses of the plaintiff and conflicted with record medical evidence. Dr. Herman's finding of marked limitations was inconsistent with his description of the plaintiff. In short, the Court agrees with the MJ that other record medical evidence does not support their conclusions; as such, the ALJ relied on substantial evidence in assigning little value to their final assessments.

The ALJ was also entitled to assign significant weight to the opinion of Dr. Chiampi, the state agency psychologist. State agency psychologists are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability," and the ALJ must consider their findings as opinion evidence. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93 n.2 (3d Cir. 2007) (quoting 20 C.F.R. §§ 404.1527(f), 416.927(f)); see also Social Security Ruling 96-6p. Given that starting point, the ALJ then credibly found that Dr. Chiampi's opinion

---

[5] The Court is satisfied with the explanation provided by the MJ. See R&R at 22-24; see also Resp. to Objections at 15-21.

was supported by evidence in the record, in particular the objective clinical findings. When consistent with the record, the ALJ was entitled to rely on Dr. Chiampi's opinion even if it contradicted the opinions of the treating physicians. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).[6]

Accordingly, the Court finds that the ALJ's weighing of medical opinion evidence is supported by substantial evidence.

IV. Conclusion

Based on the foregoing, Plaintiff's Request for Review shall be denied.

---

[6] The argument that the ALJ was not entitled to rely on Dr. Chiampi's opinion because it was rendered in 2005 is without merit. The ALJ was entitled to give weight to Dr. Chiampi's opinion even if Dr. Chiampi did not have access to all of the reports in the record so long as the ALJ considered all the evidence in the record. This is what occurred here – indeed, based on the record evidence subsequent to Dr. Chiampi's report, the ALJ was able to conclude that the plaintiff had clinically improved.